# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LAVERNE Y. YOUNT, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-05-460-KEW
 )
JO ANNE B. BARNHART, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

## OPINION AND ORDER

Plaintiff Laverne Y. Yount (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 28, 1960 and was 45 years old at the time of the ALJ's decision. She completed her education through the ninth grade but obtained a General Equivalency Diploma. Claimant has worked in the past as a garment inspector, fast food cook, and kitchen helper. Claimant alleges an inability to work beginning July 11, 2001, due to insulin dependent diabetes, impingement syndrome with tendonopathy and adhesive capuslitis of the right shoulder, carpal tunnel syndrome and stenosing synovitis of the hands, peripheral vascular disease, peripheral neuopathy, obsessive-compulsive disorder, post-traumatic stress disorder, adjustment disorder, and pain.

**Procedural History**

On December 20, 2002, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ, Eleanor T. Moser was held on October 21, 2003 where she was represented by a non-attorney claimant's representative. By decision dated March 18, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On September 2, 2004, the Appeals Council granted Claimant's request for review, vacated the ALJ's decision and remanded the case for additional evidence with regard to Claimant's alleged mental impairments and her response to additional surgeries on her shoulder and hand.

After obtaining the evidence, a second hearing was held before ALJ Larry M. Weber on June 28, 2005 in McAlester, Oklahoma where Claimant again appeared with a claimant's representative. On August 9, 2005, the ALJ issued an unfavorable decision and the Appeals Council declined review on September 22, 2005. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions

4

were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow her to perform sedentary work as a charge account clerk, call out operator, and booth cashier.

## Review

Claimant asserts the ALJ committed error requiring reversal in failing to (1) explain his reliance upon a vocational expert whose testimony conflicted with the Dictionary of Occupational Titles; (2) properly evaluate Claimant's treating physician's opinion relating to Claimant's limited reaching ability; and (3) find Claimant's impairments did not meet the twelve month durational requirement and his failure to include any limitations relating to Claimant's limited use of her hands in her RFC.

## Analysis of the VE Testimony

Claimant asserts the ALJ failed to correlate the testimony of the VE with the requirements for a particular identified job in the Dictionary of Occupational Titles ("DOT"). Among Claimant's medical conditions is subacromial impingement syndrome and AC joint arthritis of her right shoulder for which she underwent surgery on June 5, 2002. (Tr. 130-131). On August 30, 2002, Dr. James Cash, who performed the surgery, noted Claimant had reached maximum medical improvement but continued to display a nine percent total reduction in the mobility of her shoulder and should be permanently restricted from repetitive overhead lifting, repetitive long lever

5

arm lifting, or lifting over 20 pounds with her right arm. (Tr. 133). Dr. Obioma Onourah, an agency physician, examined Claimant and recognized a limitation on her ability to reach in all directions, including overhead, to handle, and to finger. (Tr. 191).

Claimant underwent an additional surgery on her right shoulder in February of 2004 to repair the supraspinatus tendon and spur removal in the acromioclavicular joint of her right shoulder. (Tr. 298-299). Dr. Steven Rowlan subsequently performed a consultative physical examination of Claimant and determined her major problem surrounds the limitation of motion in her right shoulder and the weakness and pain secondary to her rotator cuff pathology. (Tr. 302). In completing a Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Rowlan limited Claimant to occasional lifting of 10 pounds, frequent lifting of less than 10 pounds, no pushing or pulling with her upper extremities, no crawling, and limited reaching in all directions, including overhead. (Tr. 303-305).

At the second hearing granted in this matter, the ALJ received the testimony of VE Melissa Brassfield. The ALJ asked the VE to review the limitations set forth by Drs. Rowlan and Dr. Vaught, who had completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) upon Claimant. The VE stated Claimant could not perform her past relevant work but would be capable of

6

performing sedentary, unskilled work such as a charge account clerk, call out operator and booth cashier, referring to the DOT. (Tr. 388-389).

Agency regulations require that an ALJ must correlate a VE's testimony with vocational information provided in the DOT or other reliable publications, since he bears the burden at step five. 20 C.F.R. § 404.1566(d)(1); Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999). An "ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also*, Soc. Sec. R. 00-4p.

The DOT states the position of charge account clerk requires frequent reaching - a physical restriction specifically placed on Claimant. *See*, Dictionary of Occupational Titles, § 205.367-014. The ALJ failed to elicit testimony from the VE which would reconcile this conflict. With the job of booth cashier, the VE admitted the DOT contained no such occupation, although she stated 1,800 such jobs were present in the State of Oklahoma. The ALJ did not inquire further as to the limitations of this employment or ferret out whether the position would actually fall within one established within the DOT. Further, since the VE did not consider Claimant's reaching restrictions in finding the charge account

7

clerk position applicable, it is reasonable to presume she did not do so for the remaining identified positions as well. As a result, the ALJ's decision must be reversed. On remand, the ALJ shall pose questions to the VE which reflects the actual limitations Claimant possesses.

**Evaluation of Dr. Rowlan's Opinion**

Claimant also contends the ALJ failed to attribute the proper weight to Dr. Rowlan's opinions, one of her treating physicians. As previously stated, Dr. Rowlan concluded Claimant suffered from lifting and reaching restrictions due to her shoulder condition.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

8

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ acknowledged Dr. Rowlan's opinion that Claimant could only engage in limited reaching, he did not expressly state the weight he gave the opinion. Based upon his conclusions on disability, the ALJ apparently gave little weight to Dr. Rowlan's

9

opinion on Claimant's restrictions. However, because the ALJ failed to engage in the required treating physician analysis, this Court can only speculate and remand the case for further proceedings and evaluation of Dr. Rowlan's opinion.

**Durational Requirement**

Claimant challenges the ALJ's conclusion that her conditions did not meet the durational requirements of the agency's regulations. Clearly, in order to find a claimant disabled, her physical and/or mental impairments must prevent her from working for at least twelve consecutive months, unless the impairments are expected to result in death. 20 C.F.R. §§ 404.1505(a), 404.1509.

In this case, the ALJ found that even if Claimant's right shoulder and hand impairments were considered as one impairment, she failed to meet the twelve month durational requirement "because her treating physicians, after first removing claimant from work (or limiting her to a very restricted range of work) effective sometime in September (not the firs) 2001 . . ., by August 30, 2002 had released claimant for a wide range of work." (Tr. 20). As a result, the ALJ concluded Claimant did not suffer from impairments for at least twelve continuous months. (Tr. 21).

Claimant's shoulder impairment alone began in August of 2001 and continued at least until March of 2003 when she was examined by Dr. Onourah. (Tr. 196-203). Indeed, Claimant under went a second shoulder surgery in February of 2004, well outside the twelve month

10

requirement.  As a result, the ALJ's conclusion in this regard constitutes reversible error, requiring remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 15th day of November, 2006.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE